UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCE OAKLAND,<br><br>    Plaintiff,<br><br>    v.<br><br>GCCFC 2005-GG5 HEGENBERGER RETAIL LIMITED PARTNERSHIP, et al.,<br><br>    Defendants. | Case No. 19-cv-00403-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 7 |

Before the Court is a motion to dismiss plaintiff's complaint filed by defendants GCCFC 2005-GG5 Hegenberger Retail Limited Partnership ("GCCFC") and LNR Partners, LLC ("LNR") (collectively "defendants"). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the hearing set for April 26, 2019.

**BACKGROUND**

In 2005 Arce and Kera Oakland LLC acquired a shopping center at 640-640 Hegenberger Road/8281 Baldwin Street, Oakland, California ("the Property"). Compl. ¶13. The Property was purchased for a total of $14,650,000, financed with a $10.5 million-dollar loan from Greenwich Capital Financial Products, Inc. *Id*. The loan was later repackaged and purchased as a security by defendant GCCFC. *Id*. GCCFC is a trust operated through a master servicer and, if a default occurs, or is impending, a special servicer. Defendant LNR was the special servicer for GCCFC. *Id*. In December 2012, the loan went into default. The balance due was $9.4 million. *Id*. ¶ 14.

In February 2013, two lawsuits were filed: (1) a civil action in San Mateo Superior Court between Kera and plaintiff Arce, and (2) a judicial foreclosure action filed by GCCFC in Alameda

Superior Court (the "Judicial Foreclosure Action"). Compl. ¶¶ 14-15.

On March 29, 2013, upon recommendation of Duane Morris, defendants' counsel, the Superior Court appointed Lori Bluett as receiver for the Property in the Judicial Foreclosure Action. Compl. ¶ 32. Plaintiff Arce alleges defendants "solicited Arce's stipulation [as to Ms. Bluett's appointment] in order to avoid having to make a motion."[1] *Id*. Ms. Bluett hired her company, Juno Commercial Real Estate, Inc., as the property manager. *Id*. Neither Ms. Bluett, defendants, nor Duane Morris disclosed to plaintiff that defendant LNR was Ms. Bluett's client or that Duane Morris was on personal retainer as her counsel. *Id*.

GCCFC filed a Notice of Trustee's sale with a July 9, 2013 foreclosure date. Compl. ¶ 17. On July 8, 2013, Arce and Kera filed separate bankruptcy petitions, staying the Kera-Arce action and the judicial foreclosure action. *Id*. Arce's bankruptcy petition was dismissed shortly thereafter. *Id*. On December 23, 2013, the Bankruptcy Court entered Kera and Arce's global settlement ("the Global Settlement") through which Arce became the sole owner of the Property. Compl. ¶ 18. Also in December 2013, the Bankruptcy Court dismissed Ms. Bluett and her company as receiver. Dkt. No. 7 at 3 (Motion to Dismiss). After her dismissal by the Bankruptcy Court, plaintiff hired Ms. Bluett to continue managing the property. Compl. ¶ 32.

Having acquired full control of the Property, Arce alleges it sought to cure the default with various offers but defendant "LNR refused to engage." Compl. ¶ 19. Finally, on June 25, 2014, defendant LNR produced and both parties approved a term sheet pursuant to which Arce prepaid $25,000 to defendants' counsel, Duane Morris, to draft a Discounted Pay Off Agreement ("the DPO") to formalize the terms. Compl. ¶23. However, from June 26, 2014 – March 2015, LNR went dark and the DPO was not drafted. Compl. ¶ 24-26. After pressure from the Bankruptcy Court, GCCFC agreed to mediate. *Id*. The fruit of this mediation was a term sheet in May 2015 ("the May Term Sheet") that called for defendants' counsel to draft the DPO and estimated the payoff amount at $11.486 million. Compl. ¶ 24-26. The May Term Sheet required defendant to

---

[1] Plaintiff's opposition paints a more aggressive picture of Duane Morris than the complaint, stating Duane Morris "demanded that Bluett be appointed or defendants would bring a motion for relief." Opp at 9.

2

provide plaintiff with an accurate payoff statement before the DPO was executed. *Id* ¶28.

On July 24, 2015, plaintiff received a draft of the DPO but it did not reflect the terms agreed upon in the May Term Sheet. Compl. ¶ 25. Subsequent drafts of the DPO were circulated between May through November 2015 that likewise diverged from the May Term Sheet. *Id* ¶¶ 25-26.

In late 2015, LNR finally sent plaintiff a DPO ("Final DPO") reflecting the May Term Sheet and required plaintiff to approve it by the following day, which plaintiff did. Compl. ¶¶ 27-28. On December 23, 2015, the Bankruptcy Court entered an order approving the Final DPO. *Id*.

On December 22, 2015, LNR sent plaintiff a payoff statement of $13.2 million, allegedly stating it was not actually a payoff demand, rather, the amount that would be owed on March 6, 2016 if no DPO was in place. Compl. ¶ 28. Over the next several weeks, Arce alleges it repeatedly requested an accurate payoff figure because its investor had underwritten the deal based on the $11.486 million estimate defendants previously provided. *Id*. On February 10, 2016, defendants sent a revised payoff figure with the due diligence period expiring on February 21, 2016. *Id*. The complaint does not state what the February 10, 2016 payoff figure was, but alleges the it was incorrect, and presumably too high, because it failed "to account for monies in reserve accounts and was ambiguous as to whether it gave credit for deposits." *Id*. Plaintiff alleges that because the payoff figure differed from the $11.486 million estimate its investor relied upon, the investor became "disgruntled," leaving Arce with 11 days to find a replacement investor. *Id*.

On February 18, 2016, Arce requested a thirty-day extension of the due diligence period to resolve the payoff amount. Compl. ¶ 29. On February 22, 2016, the Bankruptcy Court granted defendants' request to lift the stay and foreclose on the Property. *Id*. Defendants held a foreclosure sale on March 24, 2016, the Property was sold, and Ms. Bluett was terminated as property manager. Compl. ¶¶ 30, 31. On March 30, 2016, Ms. Bluett initiated an insurance claim under the Zurich American Insurance Company policy ("Zurich Policy") to recover damages that had allegedly been ongoing throughout her management. Compl. ¶¶ 31, 34. Plaintiff alleges Ms. Bluett worked with LNR and Duane Morris regarding the Zurich Policy claim while keeping plaintiff in the dark. *Id*. Plaintiff further alleges that Ms. Bluett misled Zurich by claiming to have been hired by Arce's firm, Centers Dynamic, to respond to calls, and to sign releases on its behalf. Complaint ¶ 34. Ms. Bluett

3

allegedly also misled Zurich by failing to inform the insurance company that Arce no longer owned the Property. *Id*. Plaintiff learned of the insurance claim when the insurance broker contacted plaintiff and asked if plaintiff was aware of the pending claims; plaintiff was not. *Id*.

On July 7, 2017, GCCFC filed a complaint against Arce in the Northern District of California seeking damages for the balance remaining on the loan after the foreclosure sale. See 3:18-cv-03854, *GCCFC 2005-GG5 Hegenberger Retail Limited Partnership v. Arce et al*.

Plaintiff filed the instant action in Alameda County Superior Court in December, 2018. Defendants removed the matter on January 23, 2019. Dkt. No. 1-1 (Complaint).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

**I. DPO Waiver**

Defendants argue that, pursuant to the language of the Discounted Payout Off Agreement,

4

plaintiff waived all claims as to alleged conduct pre-dating the DPO Agreement. Motion at 5-6. Pursuant to the DPO Agreement, various actions could constitute a "Triggering Event," including: (1) "the failure to timely and fully pay any [] payment required hereunder." Dkt. No. 7 at 5 (Motion to Dismiss). In further support of this argument, defendants point to the Superior Court's finding that the DPO Agreement barred plaintiff's assertion of any pre-DPO Agreement conduct to support its claims for purposes of summary judgment. Dkt. No. 22 at 2-3.

However, the standard on summary judgment differs greatly from that of a motion to dismiss. Assuming the allegations in the complaint to be true, and drawing reasonable inferences in plaintiff's favor, the triggering event was brought about wrongfully by defendants. This is an issue of fact that the parties very well may address later on a motion for summary judgment before this Court or at trial. But, based on the record, enforcing such a waiver would be premature and improper at this time, and the Court declines to enforce the waiver.

## II. First Cause of Action: Breach of Contract

### A. Analysis of Loan Contracts

Plaintiff alleges GCCFC breached the loan contracts by (1) refusing to accept payment from plaintiff for all amounts due and (2) by failing to disclose conflicts of interest inherent in the proposed receiver, Ms. Bluett. Compl. ¶37.

Defendants argue that plaintiff's breach of contract claim with respect to the loan contracts fails because (1) pre-DPO conduct should be excluded based on waiver; (2) the implied terms that plaintiff asserts defendants breached are inconsistent with the express terms of the contract; and (3) plaintiff's damages are speculative. The Court has already addressed the waiver issue, and will not further discuss it at this time.

A pillar of contract law is that an implied term cannot contradict express terms of an agreement. *Series AGI West Linn of Appian Group Investors DE, LLC v. Eves*, 217 Cal. App. 4th 156, 158 (2013) ("Implied terms are justified only when they are not inconsistent with some express term of the contract and, in the absence of such implied terms, the contract could not be effectively performed.") (quotations and citations omitted); *see also Carma Developers (Cal.), Inc. v. Marathon*

*Development California, Inc.*, 2 Cal. 4th 342, 374 (1992) ("… as a general matter, implied terms should never be read to vary express terms.") (citation omitted). Plaintiff's alleged implied terms contradict the express terms of the loan documents. Specifically, plaintiffs allege defendants breached an implied term requiring defendants to accept payment for all amounts due after plaintiff defaulted on the loan. Dkt. No. 17 at 13-14 (Opposition). But this is inconsistent with the express terms of the contract, which states:

> Upon the occurrence of any Event of Default, Lender at Lender's option, may declare all of the sums secured by this Instrument to be immediately due and payable without further demand, ***and may invoke the power of sale*** and any other remedies permitted by applicable law or provided herein or in any of the Loan Documents.

Complaint Exhibit A at 66[2] (Deed of Trust) (emphasis added). No one disputes that an Event of Default occurred. Plaintiff's implied term would require defendants to accept payment when the above paragraph makes clear defendants were at liberty to invoke the power of sale in the Event of Default at any time and therefore had no requirement to accept payment. The deals plaintiff proposed amounted to offers or invitations to contract that defendants could choose to reject or ignore.

Likewise, an implied term requiring defendants to disclose information regarding the receiver is inconsistent with the Loan Documents' express terms. The Deed of Trust states that:

> Upon Borrower's breach of any covenant or agreement … Lender shall be entitled to the appointment of a receiver for the Property, without notice to Borrower …. In the event Lender elects to seek the appointment of a receiver for the Property upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Borrower herby expressly consents to appointment of such receiver upon the occurrence of a default …

Exhibit A to Complaint at 64-65. Further, the Assignment of Leases and Rents document reads: "Assignor expressly consents to the appointment of a receiver for the Property, without notice, either by assignee or a court of competent jurisdiction." *Id*. at 39.

Plaintiff agrees that defendants had the power to appoint a receiver but argues in its motion that defendants demanded plaintiff to agree "to its proposed Receiver upon threat of shutting down" plaintiff's business. Dkt. No. 17 at 14 (Opposition). But, significantly, this allegation does not

---

[2] For ease of reference, the page numbers referred to for the exhibits to the complaint are the ECF generated page numbers.

1 appear in the complaint. And, in any event, the loan contracts allow defendants to appoint the receiver without consulting plaintiff.

Defendants' motion to dismiss the breach of contract claims with respect to the loan documents is GRANTED without prejudice.

### B. DPO Agreement

Plaintiff alleges GCCFC breached the DPO Agreement by (1) refusing to respond to plaintiff's request to confirm the payoff amount for weeks and (2) ultimately providing an incorrect and tardy payoff amount.

Defendants argue plaintiff's breach of contract claim fails with respect to the DPO Agreement because (1) plaintiff fails to identify which terms of the DPO Agreement were breached; (2) plaintiff has not sufficiently alleged defendants were the proximate cause of plaintiff's damage; and (3) plaintiff's damages are speculative.

First, while plaintiff's complaint could certainly be clearer with respect to which term(s) of the DPO Agreement were breached, plaintiffs allege, at length, that the DPO Agreement was breached because defendants failed to provide an accurate and timely payoff amount. Section 5 of the DPO Agreement, attached as Exhibit B to the complaint, sets forth terms regarding the payoff amount. Exhibit B to Complaint at 116. While it does not explicitly say that defendants shall provide the payoff amount, an implied term saying as much is reasonable and necessary to fulfill the contract. Section 5 even contemplates a third party investor who would elect "to consummate the Transaction" – indicating that defendants knew, anticipated, and expected a third party's involvement in the transaction, making a reliable payoff amount that much more important.

Defendants' second argument fails as well. The complaint alleges defendants breached the DPO Agreement by "refusing to respond to Plaintiff's request to confirm the payoff amount for weeks and weeks, and then, by providing an incorrect payoff amount, and then providing the incorrect payoff amount late." Compl. ¶ 38. Defendants argue that even if the "allegations were true, they did not proximately cause the harm Plaintiff suffered, i.e., loss of the Oakland Property through foreclosure." Dkt. No. 7 at 9 (Motion to Dismiss). But that is exactly what plaintiff alleges:

7

that defendants created an unreasonable moving target by failing to provide an accurate and timely payoff amount, leading to plaintiff's investor falling through, and the property being foreclosed. Plaintiff alleges defendants knew an investor was waiting in the wings for a definite payoff figure. Compl. ¶28 ("Over the next several weeks, Arce repeatedly requested an accurate payoff figure, as its investor had underwritten the deal in reliance on the $11.486 million…"); see also Exhibit B to the Complaint at 116 (DPO Agreement contemplated a third party investor). Plaintiff has adequately plead causation.

Finally, defendant's third argument, that plaintiff's damages are speculative, also fails. Defendants argue that "it is entirely speculative whether plaintiff would have ultimately closed on a transaction satisfying all the requirement (sic) under the DPO Agreement." Dkt. No. 7 at 9 (Motion to Dismiss). For purposes of surviving a motion to dismiss, plaintiffs have shown they were ready and willing to close a transaction if not for defendants' failure to communicate and provide necessary information.

Defendants' motion to dismiss the breach of contract claims with respect to the DPO Agreement is DENIED.

### III. Second Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges GCCFC breached the Implied Covenant of Good Faith and Fair Dealing ("Covenant") in the loan contract by (1) keeping plaintiff in default for an unreasonably long period of time, (2) unreasonably delaying and refusing to finalize the DPO Agreement, and (3) failing to properly perform under the DPO Agreement. Plaintiff alleges GCCFC breached the Covenant in the DPO Agreement because although it knew the time frame that plaintiff's investor had before the deposit became non-refundable, it provided an incorrect payoff amount, resulting in the investor pulling out of the deal.

Defendants argue the second cause of action should be dismissed because (1) pre-DPO conduct should not be considered based on waiver and (2) plaintiff's claim – with respect to both the loan contracts and the DPO Agreement – is precluded because no breach of an express

8

contractional provision is plead.

The Court has already rejected the first argument. Defendants' second argument fails as well, because the California Supreme Court has made clear that to plead a breach of the Covenant, citation to a "specific provision of the contract" – in other words, an express contractual provision – "is not a necessary prerequisite. Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc*., 2 Cal. 4th 342, 373 (1992).

However, like any implied term, the implied Covenant cannot contradict an express term of the contract. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 374 (1992) ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement."). Therefore, plaintiff's breach of the covenant of good faith and fair dealing claim with respect to the loan documents cannot survive since, pursuant to the loan documents, defendants were under no obligation to accept deals proffered to cure default. See section II.A. above. Further, defendants' alleged delay in consummating the DPO is not actionable, since enforcing such an implied term would likewise contradict the loan documents.

Thus, Defendants' motion to dismiss the second cause of action is GRANTED with respect to the loan documents, i.e., keeping plaintiff in default for an unreasonably long period of time and by unreasonably delaying and refusing to finalize the DPO Agreement. Defendants' motion is DENIED with respect to failing to properly perform under the DPO Agreement.

**IV. Third Cause of Action: Concealment and Breach of Fiduciary Duty**

Plaintiff alleges that defendants

> had a special relationship with Plaintiff because they began to insert themselves into the business of the borrower. The Borrowers' business was the investment, development, and resale of commercial properties. But [defendants] took the position that they had veto power to decide what transactions Plaintiff could enter into and not enter into, and under what terms, even when the terms the borrower desired to utilize included a complete payoff for them. As a consequence, [defendants] stepped out of their traditional roles as lenders/special servicers and interfered with the operations of the borrower.

9

Compl. ¶49. Based on this alleged "special relationship," plaintiff alleges defendants (1) had a duty to disclose all material facts; (2) a duty to act in plaintiff's best interest, including but not limited to disclosing the relationship among Ms. Bluett, defendants, and defendants' counsel; and (3) to consent to business transactions defendants already agreed to and/or would have paid them off. *Id.*

Defendants argue the third cause of action should be dismissed because (1) California law does not recognize a fiduciary duty in the lender-borrower relationship and (2) plaintiff has failed to sufficiently allege causation and damages. Motion at 11.

The Court need not address causation and damages because plaintiff has not, and likely cannot, establish defendants owed Arce a fiduciary duty. The relationship between the parties never departed from one of lender and borrower. In California, lenders do not owe borrowers fiduciary duties. *Wolf v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 117835 (October 12, 2011) (Hon. Alsup) ("…barring an assumption of duty or a special relationship, financial institutions owe no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096, 283 Cal. Rptr. 53 (1991)") (internal quotations omitted).

Plaintiffs cite a litany of purportedly analogous cases showing that where there is something more than a traditional lender-borrower relationship, a fiduciary relationship will be found. However, these cases are inapposite. For example, *Brown v. Wells Fargo Bank N.A.* involved a "vulnerable" elderly couple and the holding was quite narrow. Specifically, the court concluded "[w]hen the facts establish that an *investment professional* has previously *voluntarily induced* a *vulnerable individual* to repose trust and confidence in the professional, that professional has a fiduciary duty toward that individual …" *Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 944 (2008) (emphasis added). The instant action does not involve vulnerable unsophisticated parties. Plaintiffs also cite *H.A. Marshall Invs. v. JPMorgan Chase Bank, N.A.*, but that case is also inapposite. There, plaintiffs alleged "a bait-and-switch—the loan documents they reviewed differed from the documents presented for signing" and the complaint alleged the defendant sought to "act for the benefit of plaintiffs [and] actively sought fiduciary obligations." *H.A. Marshall Invs. v. JPMorgan Chase Bank, N.A.*, 2013 U.S. Dist. LEXIS 4234 (N.D. Cal. Jan 10, 2013) (Hon. Gonzalez

10

1 Rogers). Plaintiff's complaint in the instant action does not make such allegations.

Defendants' motion to dismiss the third cause of action is GRANTED.

## V. Fourth Cause of Action: Negligence

Plaintiff alleges that defendants "owed a duty to Plaintiff by virtue of their assurances, promises, control over the property and insertion in the business of Plaintiff," and breached that duty by: (1) refusing to consider numerous offers that would have cured default; (2) unexplained silences and unresponsiveness; (3) delaying the timely production of an accurate payoff statement; and (4) submitting an inaccurate and incomplete payoff statement at the last minute. Compl. ¶¶ 53-54.

Defendants argue the fourth cause of action should be dismissed because (1) lenders do not owe borrowers a duty of care and (2) plaintiff has not adequately plead causation and damages.

Again, the Court need not reach the issues of causation and damages because lenders do not owe borrowers a general duty of care. *Benson v. Ocwen Loan Servicing, LLC*, 562 Fed. Appx. 567, 569-570 (9th Cir. 2014). ("The district court did not err in dismissing [plaintiff's] negligence claim against [lenders] for failure to state a claim, because neither [lender] owed [plaintiff] a common law duty of care.").

Defendants' motion to dismiss the fourth cause of action is GRANTED.

## VI. Seventh Cause of Action: Aiding and Abetting Breach of Fiduciary Duty

To plead a cause of action for aiding and abetting a breach of fiduciary duty, plaintiff must establish: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach and harm to Plaintiff; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff. *In re Mortg. Fund '08 LLC*, 527 B.R. 351, 361 (N.D. Cal. 2015).

Plaintiff's explanation of its seventh cause of action is better in its opposition papers than in the complaint itself. Nevertheless, plaintiff has adequately stated a claim for Aiding and Abetting Breach of Fiduciary Duty. It is undisputed that in her capacity as property manager, Ms. Bluett owed plaintiff a fiduciary duty. Although defendants argue that plaintiff failed to plead sufficiently

that defendants had actual knowledge of the breach and gave substantial assistance to Ms. Bluett, Dkt. No. 7 at 13-14 (Motion to Dismiss), the Court disagrees.

Ms. Bluett's actions as alleged in the complaint – initiating the insurance claim after she was discharged as property manager, failing to inform her client (plaintiff) about the insurance claim, and communicating with defendants and defendants' counsel about the claim – are allegations of defendants' actual knowledge and substantial assistance, especially when taken with other facts alleged. For example, Ms. Bluett was defendants' choice for receiver, had defendants' counsel on retainer, and allegedly made statements indicating her loyalty was improperly divided after her title shifted from receiver to property manager (i.e. plaintiff's employee/agent). Compl. ¶ 33-34.

Defendants' motion to dismiss the seventh cause of action is DENIED.

**VII.    Eighth Cause of Action: Unfair Competition**

Plaintiff's eighth cause of action arises under California Business and Professions Code § 17200 ("UCL"), which bars unlawful, unfair, or fraudulent business practices. Specifically, plaintiff invokes the "unfair" prong.[3] "Because the statute is written in the disjunctive, it is violated if a defendant violates any of the unlawful, unfair or fraudulent prongs." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017). To prevail on a UCL claim alleging the unfair prong, a plaintiff must plead a business practice that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010). Contrary to defendants' argument in their reply brief, plaintiff's opposition does point to specific instances where violations of the UCL are alleged. Specifically, "LNR refused to engage in resolving the default and either rejected, ignored, or allowed offers to die that would have cured the default, thus refusing to accept payment (Complaint ¶ 19); kept Plaintiff in default to make money off of additional fees, including a default interest rate of 50%, that it earned while Plaintiff

---

[3] The complaint alleges both unlawful and unfair business practices, but plaintiff seems to abandon the "unlawful" prong and did not discuss it in the opposition. Further, the complaint fails to state what, if any, state, federal, or local law can serve as the predicate for an unlawful claim.

was in default (*Id.* at ¶ 21)[4]; provided an inaccurate and incomplete payoff demand (*Id.* at ¶ 54)" as a few examples. Dkt. No. 17 at 29 (Opposition).

Defendants' motion to dismiss the eighth cause of action is DENIED.

## CONCLUSION[5]

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically:

**First Cause of Action (Breach of Contract)**
--Defendants' motion to dismiss the breach of contract allegations with respect to the loan documents is GRANTED;
--Defendants' motion to dismiss the breach of contract allegations with respect to the DPO Agreement is DENIED.

**Second Cause of Action (Breach of Implied Covenant of Good Faith and Fair Dealing)**
--Defendants' motion to dismiss the second cause of action with respect to the loan documents – i.e., keeping plaintiff in default for an unreasonably long period of time and by unreasonably delaying and refusing to finalize the DPO Agreement – is GRANTED;
--Defendants' motion is DENIED with respect to allegedly failing to properly perform under the DPO Agreement.

**Third Cause of Action (Concealment and Breach of Fiduciary Duty)**
--GRANTED.

**Fourth Cause of Action (Negligence)**
--GRANTED.

**Seventh Cause of Action (Aiding and Abetting Breach of Fiduciary Duty)**
--DENIED.

**Eighth Cause of Action (Unfair Competition)**
--DENIED.

---

[4] The complaint does not include any information regarding a 50% interest rate. This fact appears only in plaintiff's opposition. The complaint does state that LNR was incentivized by "additional fees and other compensation during the tenure of a loan default…" Dkt. No. 1-1 ¶ 21.

[5] The Court also GRANTS defendants' Requests for Judicial Notice. Dkt. Nos. 8 and 23.

Since this motion is directed to the initial complaint in this case, the dismissals included in this order are without prejudice to efforts at amendment. **Any amended complaint must be filed no later than April 22, 2019.**

**IT IS SO ORDERED**.

Dated: April 11, 2019

_____
SUSAN ILLSTON
United States District Judge